UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TRAVIS JAKUBOWSKI,

      Petitioner,

v.                                                                Case No. 3:22-cv-393-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Travis Jakubowski, an inmate of the Florida penal system, initiated this action through counsel in the United States District Court for the Northern District of Florida on February 28, 2022, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). The assigned judge transferred the action to the Middle District of Florida on April 6, 2022. See Order Accepting and Adopting Report and Recommendation (Doc. 4). In the Petition, Jakubowski challenges a 2018 state court (Duval County, Florida) judgment of conviction for sexual battery and burglary with assault or battery. He raises four grounds for relief. See

Petition at 27–49.[1] Respondents submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Response; Doc. 12). They also submitted exhibits. See Docs. 12-1 through 12-20. Jakubowski did not file a brief in reply, and briefing closed on March 6, 2023. See Order (Doc. 13). This action is ripe for review.

## II. Relevant Procedural History

On September 26, 2017, the State of Florida charged Jakubowski by second amended information with sexual battery (count one) and burglary with assault or battery (count two). Doc. 12-3 at 69–70. Jakubowski proceeded to a trial, and on January 18, 2018, a jury found him guilty of the two charged offenses. Id. at 126–27. On February 14, 2018, the trial court sentenced Jakubowski to concurrent thirty-year terms of imprisonment followed by a term of life on sex offender probation. Id. at 214–21.

On direct appeal, with the benefit of counsel, Jakubowski filed an initial brief arguing the trial court erred when it: (1) admitted the testimony of a Williams[2] Rule witness, and (2) admitted hearsay statements from the victim to a nurse. Doc. 12-5 at 1–35. The State filed an answer brief, Doc.

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.
[2] Williams v. State, 110 So. 2d 654 (Fla. 1959).

2

12-7 at 1–27, and Jakubowski replied, Doc. 12-8 at 1–7. The First District Court of Appeal (First DCA) affirmed Jakubowski's conviction and sentence in a written opinion on December 31, 2019, Doc. 12-9 at 1–4, and issued the mandate on January 21, 2020, Doc. 12-10 at 1. Jakubowski subsequently attempted to invoke the discretionary jurisdiction of the Florida Supreme Court. Doc. 12-11 at 1–2. On March 30, 2020, the Florida Supreme Court dismissed Jakubowski's petition for review based on his failure to timely file a jurisdictional brief. Doc. 12-12 at 1.

Jakubowski retained postconviction counsel, and on February 12, 2021, he filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 12-13 at 4–33. In the Rule 3.850 motion, Jakubowski alleged counsel was ineffective when she failed to: investigate and discover impeachment evidence (ground one); investigate, depose, and call an "exculpatory and/or impeachment witness" (ground two); move for a mistrial or a Richardson[3] hearing (ground three); and ensure that the trial court gave the limiting instruction on Williams Rule evidence at the time the State presented the evidence (ground four). Id. The postconviction court denied relief on all grounds. Id. at 37–56. On December 27, 2021, the First

_____

[3] Richardson v. State, 246 So. 2d 771 (Fla. 1971).

3

DCA per curiam affirmed the denial of relief without a written opinion, Doc. 12-16 at 1–2, and on January 13, 2022, it issued the mandate, Doc. 12-17 at 1.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Jakubowski's] claim[s]

without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the

5

state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192

> L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Titlow</u>, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant

9

> of a fair trial, a trial whose result is reliable." <u>Id.</u>, at
> 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was

10

> incorrect but whether that determination was
> unreasonable — a substantially higher threshold."
> Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct.
> 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument that
> counsel satisfied Strickland's deferential standard,"
> then a federal court may not disturb a state-court
> decision denying the claim. Richter, 562 U.S. at ---,
> 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by Strickland, the AEDPA adds

another layer of deference—this one to a state court's decision—when we are

considering whether to grant federal habeas relief from a state court's

decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As

such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v.

Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Jakubowski argues that counsel was ineffective when

she failed to investigate and discover impeachment evidence that would have

shown the victim—B.Z.—lied to the jury. See Petition at 27. He asserts that

counsel "could have used [B.Z.'s] cell phone records as evidence to impeach

11

B.Z. on cross-examination after she testified before the jury that she called [Dina Del] Carmen-Varela to inquire about [] furniture, when in fact the records indicate that no such call was ever made." Id. at 30.

The record reflects that during trial, B.Z. testified she was at Carmen-Varela's residence babysitting Carmen-Varela's son on the morning of the offense. Doc. 12-4 at 164–65. According to B.Z., Jakubowski knocked on the door of the residence to inquire about buying furniture that Carmen-Varela had placed at the curb. Id. at 166. B.Z. testified that she called Carmen-Varela, who told her that Jakubowski could take the furniture. Id. at 167.

During her deposition, B.Z. testified that Jakubowski knocked on the door at approximately 8:00 a.m. See Petition at 28. The 911 call reporting the offense was initiated at 11:13 a.m. See id. However, Jakubowski asserts that B.Z.'s cellphone records show that she did not make any outgoing calls during that time period. See id. Moreover, Carmen-Varela provided a statement to law enforcement, but she failed to give "any indication that she received a mid-morning call from B.Z. regarding a stranger inquiring about her furniture." Id. at 29. According to Jakubowski, "[t]he absence of any outgoing calls during the relevant time period on B.Z.'s call log, coupled with []

12

Carmen-Varela's scant statement to law enforcement, . . . means B.Z. lied to the jury . . . ." Id.

Jakubowski raised a substantially similar claim in his Rule 3.850 motion. Doc. 12-13 at 15–20. The postconviction court denied relief, stating in pertinent part:

> "Generally, impeachment on a collateral issue is impermissible." Foster v. State, 869 So. 2d 743, 745 (Fla. 2d DCA 2004). A matter is collateral or irrelevant when it cannot be admitted for any purpose other than simply contradicting a witness. Id. Two types of evidence pass this test: (1) facts relevant to a material issue in the case and (2) facts which discredit a witness specifically by pointing out the witness' bias, corruption, or lack of competency. Id.; see also Lawson v. State, 651 So. 2d 713, 715 (Fla. 2d DCA 1995) ("The test of relevancy and materiality is whether the cross-examining party could have, for any purpose other than impeachment, introduced evidence on the subject in its case in chief."). For example, in a sexual battery case, evidence that contradicts the victim's testimony about what clothes she was wearing at the time the defendant attacked her is collateral and therefore inadmissible. See Anderson v. State, 133 So. 3d 646, 647 (Fla. 1st DCA 2014) ("This line of questioning was an attempt to impeach the victim on a collateral matter because defense counsel was seeking only to contradict the victim's assertion that she was wearing jogging clothes, rather than pajamas. This evidence was not relevant to any issue in the case as it did not reflect on Anderson's guilt or innocence. Moreover, the victim's alleged false characterization

13

of her clothing did not show bias, corruption, or lack of competency as a witness.").

Here, whether [B.Z.] called Ms. Carmen-Varela on the phone is not material to the issue of whether Defendant sexually battered [B.Z.] Indeed, [B.Z.] testified that the sole purpose of the phone call was to ask whether Ms. Carmen-Varela had any objections to the man at the door carrying off her used furniture. Obviously, the phone call did not relay any details of the attack because, as [B.Z.] testified, the attack had yet to occur. Moreover, Defendant's presence in the community on the morning of April 17th is not in dispute. [B.Z.,] Walkeria Candeids, and Jocenildo Suave all testified about their encounters with Defendant during the morning hours of April 17th. Defendant also admitted to Detective [William Randolph] that he was in the community between 9:00 and 10:00 AM. Thus, it is not as if the State relied on the phone call between [B.Z.] and Mrs. Carmen-Varela to place Defendant at the crime scene.

Instead, the only purpose of the Defense presenting [B.Z.'s] cell phone records to prove the absence of a phone call would be to diminish her credibility generally. Defendant's motion underscores this point when it asks, "If [B.Z.] lied about placing the call regarding the furniture to Ms. Carmen-Varela, what else was she being untruthful about?" Defense Counsel would not have been able to offer [B.Z.'s] phone records to impeach her on a collateral matter. See Foster, 869 So. 2d at 745; Lawson, 651 So. 2d at 715; Anderson, 133 So. 3d at 647. And Defense Counsel was not ineffective for failing to present inadmissible records.

Furthermore, Defendant characterizes this matter as a purely "he said, she said" case. As the

14

> trial summary reflects, that is simply not true. In light of the full body of evidence, there is no reasonable probability the ultimate outcome of Defendant's trial would have changed if only Defense Counsel had presented [B.Z.'s] cell phone records. As such, Defendant cannot satisfy the prejudice prong of Strickland and his claim for relief fails on the merits.

Doc. 12-13 at 45–47 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-16 at 1–2.

To the extent that the First DCA decided this claim on the merits,[4] the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

When an ineffectiveness claim involves a question of state law, a federal habeas court must defer to the state court's construction of its own

---

[4] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 584 U.S. at 125.

law. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). In other words, if Florida courts "already ha[ve] told us how the issues would have been resolved under Florida state law had [counsel] done what [petitioner] argues he should have done," then "federal habeas courts should not second-guess [the state courts] on such matters." Herring v. Sec'y, Dep't of Corrs., 397 F.3d 1338, 1354–55 (11th Cir. 2005) (quotation marks omitted).

Here, the postconviction court determined that whether B.Z. contacted Carmen-Varela was a collateral matter that could not serve as a basis for impeachment under Florida's rules of evidence and procedure. The Court is bound by the postconviction court's interpretation of Florida law. See id. As such, counsel did not perform deficiently when she failed to impeach B.Z. with extrinsic evidence of the collateral matter. Therefore, relief on the claim in Ground One is due to be denied.

## B. Ground Two

Next, Jakubowski alleges counsel was ineffective when she failed to investigate, depose, and call Carmen-Varela as an "exculpatory and/or impeachment witness." Petition at 33. As noted above, B.Z. testified at trial

that Jakubowski knocked on the door of Carmen-Varela's residence to inquire about taking furniture on the curb. Doc. 12-4 at 166. B.Z. stated she contacted Carmen-Varela, who instructed her to "go ahead and let [Jakubowski] through, he always comes by the neighborhood collecting the furniture." Id. at 167. According to Jakubowski, he "has never collected furniture from [that neighborhood] and has never met [] Carmen-Varela. Yet, [] Carmen-Varela was familiar with a man who routinely collects furniture from around the neighborhood. [] Carmen-Varela thus identified an individual who [Jakubowski] could have been mistaken for and who was likely the actual assailant." Petition at 35.

Jakubowski raised a substantially similar claim in his Rule 3.850 motion. Doc. 12-13 at 21–24. The postconviction court denied relief, stating in pertinent part:

> The trial court conducted a sworn colloquy with Defendant. Inter alia, the court asked Defendant whether he had conferred with Defense Counsel about which witnesses they would present at trial. Defendant answered affirmatively. The court also asked Defendant whether he was on board with the witnesses Defense Counsel would be calling. Defendant again answered affirmatively. Accepting the claims contained in Ground Two of Defendant's motion requires discounting his sworn assertions to the trial court. Defendant may not obtain postconviction relief in that manner. See Kelley v.

State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) ("A
rule 3.850 motion cannot be used to go behind
representations the defendant made to the trial
court, and the court may summarily deny post-
conviction claims that are refuted by such
representations."); Henry v. State, 920 So. 2d 1245,
1246 (Fla. 5th DCA 2006) ("Defendants are bound by
the statements made by them under oath . . . .").
Because it is belied by the record, Ground Two of
Defendant's motion does not warrant postconviction
relief.

Additionally, as the Court explained in its
discussion of Ground One, the question of whether
[B.Z.] spoke with Ms. Carmen-Varela on the phone
was not a material issue at trial. Defendant does not
dispute that he was in the community on the morning
of April 17, 2017 (indeed, he conceded this point
during his interview with Detective [Randolph]). The
disputed issue at trial was whether Defendant
attacked and sexually battered [B.Z.] The existence
vel non of a pre-attack phone call between [B.Z.] and
Ms. Carmen-Varela is not a material issue that could
have swayed the result of Defendant's trial. Stated
differently, there is no reasonable probability that
Ms. Carmen-Varela's testimony concerning whether
[B.Z.] called her on the phone before the attack would
have changed the jury's verdicts. And in the absence
of that reasonable probability, Defendant cannot
demonstrate the prejudice that Strickland requires.

Defendant's claim concerning Ms. Carmen-
Varela's alleged knowledge of a man who previously
collected discarded furniture from the community
also fails. The relevant portion of the trial transcript
reads:

18

A [B.Z.]: He, um, knocked on the door, and I could see through the glass on the door, and he was pointing me to the furniture and was doing the dollar sign, if I wanted money.

Q [the State]: Did you communicate with anyone to find out if he could have the furniture?

A: Yes.

Q: And who was that?

A: I contacted the lady of the household, because the day prior she had changed her home furniture.

Q: Did you ever open the door?

A: Um, after speaking to the household lady, she instructed me, yeah, go ahead and let him through, he always comes by the neighborhood collecting the furniture.

Q: This particular person, or just people in general?

A: No, him.

[B.Z.'s] testimony was that she called Ms. Carmen-Varela on the phone only to verify whether the man at the door could carry off Ms. Carmen-Varela's discarded furniture. Ms. Carmen-Varela indicated the man could do so and her conversation with [B.Z.] suggests that a man had come through the community on previous occasions to collect furniture. However, Ms. Carmen-Varela obviously

19

did not see the man who was standing at the door on the morning of April 17th. [B.Z.] did not describe the man to Ms. Carmen-Varela over the phone. Instead, she merely indicated that a man was at the residence inquiring about the discarded furniture's availability. Thus, even if another man had really come through the neighborhood on previous occasions to collect unwanted furniture and even if Ms. Carmen-Varela was aware of such a man's existence, her phone conversation with [B.Z.] is not evidence that it was that man—rather than Defendant—who battered [B.Z.] At most, the portion of the testimony at issue establishes that Ms. Carmen-Varela <u>assumed</u> the person standing on her front step was someone who had previously picked-up used furniture in the community.

Simply put, this portion of [B.Z.'s] testimony is not the exonerating revelation that Defendant believes it is. Three eyewitnesses placed Defendant at or near the crime scene in the relevant time frame. Defendant admitted to being in the community on the morning of the attack. [B.Z.] identified Defendant as her attacker in a police photo lineup and again at trial. A photograph of Defendant that police took shortly after April 17th showed Defendant with a wound on his hands. DNA testing "clearly" showed "some DNA that was consistent with Mr. Jakubowski on one of the [victim's] fingernail scrapings." And a <u>Williams</u> Rule witness testified that Defendant attacked her under highly similar circumstances, suggesting a common scheme or plan on Defendant's part. <u>See</u> <u>Jakubowski</u>, 286 So. 3d at 957.[5] In light of the full body of evidence, there is no reasonable probability the jury would have reached a different result if only Defense Counsel had called Ms.

---

[5] <u>Jakubowski v. State</u>, 286 So. 3d 955 (Fla. 1st DCA 2019).

> Carmen-Varela to testify about whether she indeed was aware of a man who previously collected used furniture in the community.
>
> For the reasons set forth above, the Court denies Ground Two of Defendant's motion.

Doc. 12-13 at 48–50 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-16 at 1–2.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Jakubowski is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, the ineffectiveness claim is without merit because Jakubowski fails to establish prejudice. Jakubowski admitted he was in the neighborhood between 9:00 a.m. and 10:00 a.m. on the day of the

offense. Doc. 12-4 at 239. Two residents confirmed his presence in the neighborhood as early as 8:00 a.m., id. at 196–97, 229–30, 233, and B.Z. identified Jakubowski as her assailant in the courtroom and in a photospread, id. at 166, 179–80.

In contrast, Carmen-Varela was not present on the day of the incident. And she merely assumed that the man inquiring about the furniture was the same man who frequented the neighborhood. As such, Carmen-Varela's testimony would have been largely inconsequential to the issue of identity. Therefore, even if counsel had investigated, deposed, and called Carmen-Varela as a witness, no reasonable probability exists that the outcome of trial would have been different. Based on the above, Jakubowski is not entitled to federal habeas relief on the claim in Ground Two.

## C. Ground Three

In Ground Three, Jakubowski argues that counsel was ineffective when she failed to move for a mistrial or a Richardson hearing. See Petition at 39. According to Jakubowski, the "crucial fact—that [] Carmen-Varela knew and was familiar with the man whom B.Z. alleged sexually battered her—was never previously disclosed to the defense." Id. at 40.

Jakubowski raised a substantially similar claim in his Rule 3.850 motion. Doc. 12-13 at 25–29. The postconviction court denied relief, stating:

> Here, the predicate for Ground Three of Defendant's motion is his allegation that [B.Z.] changed her version of events mid-trial. Defendant cites the same portion of the trial transcript that he highlighted in Ground Two of his motion:
>
>> A [B.Z.]: He, um, knocked on the door, and I could see through the glass on the door, and he was pointing me to the furniture and was doing the dollar sign, if I wanted money.
>>
>> Q [the State]: Did you communicate with anyone to find out if he could have the furniture?
>>
>> A: Yes.
>>
>> Q: And who was that?
>>
>> A: I contacted the lady of the household, because the day prior she had changed her home furniture.
>>
>> Q: Did you ever open the door?
>>
>> A: Um, after speaking to the household lady, she instructed me, yeah, go ahead and let him through, he always comes by the neighborhood collecting the furniture.
>>
>> Q: This particular person, or just people in general?

A: No, him.

Defendant argues this was the first time [B.Z.] ever noted that "the lady of the household" (i.e., Ms. Carmen-Varela) "knew and was familiar with the man whom [B.Z.] alleged sexually battered her." He avers that Defense Counsel's "preparation and/or trial strategy would have been materially different had the fact that Ms. Carmen-Varela allegedly knew the individual collecting furniture properly been disclosed."

To secure a mistrial based on [B.Z.'s] testimony allegedly containing new, unanticipated information, Defense Counsel would have needed to show the revelation was "so prejudicial as to vitiate the entire trial." See Duest, 462 So. 2d at 448.[6] And to prevail at a Richardson hearing, Defense Counsel would have needed to show that the State suppressed evidence that prejudiced Defendant's ability to prepare for trial. See Sinclair, 657 So. 2d 1140.[7]

Again, Defendant's presence in the neighborhood on the morning of the crime is not in dispute. [B.Z.,] Walkeria Candeids, and Jocenildo Suave all testified about their encounters with Defendant during the morning hours of April 17th. Defendant also admitted to Detective [Randolph] that he was in the community between 9:00 and 10:00 AM. As set forth in the Court's discussion of Ground Two, Ms. Carmen-Varela being aware that a man collected discarded furniture from the community on previous occasions is not evidence that had any material bearing on the outcome of Defendant's trial. Contrary to what Defendant alleges, [B.Z.'s]

---

[6] Duest v. State, 462 So. 2d 446 (Fla. 1985).

[7] Sinclair v. State, 657 So. 2d 1138 (Fla. 1995).

24

testimony does not establish that Ms. Carmen-Varela "knew and was familiar with the man" who sexually battered [B.Z."] At most, the testimony shows that Ms. Carmen-Varela was generally aware that a man had previously collected discarded furniture in the community and that she <u>assumed</u> the man [B.Z.] referenced on the phone may have been this man.

Because there is no reasonable probability the trial court would have actually granted a mistrial or ruled in favor of Defendant at a <u>Richardson</u> hearing, the Court denies Ground Three of Defendant's motion. <u>See</u> <u>Whitted v. State</u>, 992 So. 2d 352, 353 (Fla. 4th DCA 2008) ("Counsel was not ineffective for failing to file a motion sure to be denied.").

Doc. 12-13 at 51–53 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-16 at 1–2.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Jakubowski's ineffectiveness claim turns on a question of Florida law—whether a <u>Richardson</u> violation occurred or grounds for a mistrial existed when B.Z. testified at trial for the first time that Carmen-Varela knew a man who collected furniture in the neighborhood. And the postconviction court determined that the trial court would have denied such motions. The Court is bound by the postconviction court's interpretation of state law. See <u>Hooker v. Sec'y, Dep't of Corr.</u>, No. 8:20-CV-549-TPB-JSS, 2022 WL 17572775, at *2 (M.D. Fla. Nov. 1, 2022)[8] ("Because the ineffective assistance of counsel claim turns on a question of state law, this Court defers to the post-conviction court's determination that under state law the trial court would have overruled any further objection and would have denied a motion for mistrial."); <u>Huddleston v. Sec'y, Dep't of Corr.</u>, No. 8:16-CV-76-T-02AAS, 2019 WL 339225, at *5 (M.D. Fla. Jan. 28, 2019) ("[W]hether counsel should have objected and moved for a <u>Richardson</u> hearing is a question of state law. The state court's denial of this claim is dispositive of the underlying state law issue, and ultimately binds this Court."). Accordingly, counsel did not

---

[8] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. See <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

perform deficiently when she failed to move for a mistrial or request a Richardson hearing. As such, relief on the claim in Ground Three is due to be denied.

## D. Ground Four

Last, Jakubowski asserts that counsel was ineffective when she failed to ensure that the trial court gave the limiting instruction on Williams Rule evidence at the time the State presented the evidence. See Petition at 45. Jakubowski raised a substantially similar claim in his Rule 3.850 motion. Doc. 12-13 at 29–32. The postconviction court denied relief, stating in pertinent part:

> It is a "well-established presumption" that a jury follows the trial court's instructions. R.J. Reynolds Tobacco Co. v. Thomas, 264 So. 3d 199, 202 (Fla. 4th DCA 2019) (quoting Philip Mor[r]is USA Inc. v. Martin, 262 So. 3d 769, 777-78 (Fla. 4th DCA 2018)). Here, it is undisputed that the trial court correctly instructed the jury about the proper role of Williams Rule evidence. Jakubowski, 286 So. 3d at 957. Defendant cannot demonstrate that the jury disregarded the trial court's correct Williams Rule instruction merely because the court gave it as part of the final jury charge rather than as a special, stand-alone instruction during trial. And in the absence of that showing, Ground Four fails to establish the prejudice that Strickland requires. Accordingly, the Court denies Ground Four of Defendant's motion.

27

Doc. 12-13 at 54 (record citation omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-16 at 1–2.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Although the trial court did not instruct the jury on other crimes evidence immediately prior to the Williams Rule witness's testimony, the State referenced the evidence in its opening statement and advised the jury that the Williams Rule witness would testify about a similar incident that Jakubowski is "not on trial for." Doc. 12-4 at 140. Moreover, after closing arguments, the trial court instructed the jury on Florida Standard Jury Instruction 3.8(a) regarding Williams Rule evidence, which advised that Jakubowski cannot be convicted of a crime not included in the Information. Id. at 390. Therefore, the jury received the proper instruction before

deliberations. Jakubowski cannot demonstrate that but for counsel's failure to request that the instruction be read earlier, the outcome of trial would have been different. As such, he is not entitled to federal habeas relief on the claim in Ground Four.

**VII. Certificate of Appealability
Pursuant to 28 U.S.C. § 2253(c)(1)**

If Jakubowski seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Jakubowski "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now **ORDERED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Jakubowski appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

30

4.     The Clerk of the Court is directed to close this case and terminate

any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of

July, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 7/2
c:      Counsel of record

31